UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRUZ ARELLANO-ORTIZ,<br><br>                Petitioner,<br><br>                v.<br><br>FRANCISCO J. QUINTANA, WARDEN,<br><br>                Respondent. | Case No. 2:23-06290-ADS<br><br>ORDER DENYING MOTION TO DISMISS, GRANTING PETITION, AND TRANSFERRING MOTION FOR MODIFICATION OF SUPERVISED RELEASE |

I. **INTRODUCTION**

Pending before the Court is a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") by Petitioner Cruz Arellano-Ortiz ("Petitioner") an inmate proceeding pro se and in the custody of the Federal Bureau of Prisons ("BOP") in Victorville, California. (Dkt. No. 1.)[1] The Petition claims the BOP failed to apply earned time credits ("ETCs") under the First Step Act of 2018 ("FSA"). (Id. at 3–4.)

---

[1] All citations to electronically-filed documents are to the CM/ECF pagination.

   cc:      eben-shmuel@bop.gov
               clb-ccm-s@bop.gov
               usacac.habeas@usdoj.gov
               caseview.ecf@usdoj.gov
               InterdistrictTransfer_OKWD@okwd.uscourts.gov

Respondent Warden Francisco J. Quintana ("Respondent") filed a Motion to Dismiss the Petition (the "Motion") arguing that Petitioner failed to exhaust his claim, and that he is statutorily barred from receiving the ETCs. (Dkt. Nos. 6, 12.) Petitioner opposed the Motion. (Dkt. No. 9.) Respondent did not file a reply. On January 4, 2024, the Court held a hearing on the Motion (the "Hearing"), at which Petitioner, counsel for Respondent, a representative for the BOP, and a BOP employee translating for Petitioner appeared. (Dkt. Nos. 14, 16.) Both Petitioner and Respondent filed a Consent to Proceed Before a United States Magistrate Judge. (Dkt. Nos. 17, 17-1.) As such, the parties voluntarily consent to have a United States Magistrate Judge conduct all further proceedings in this case, decide all dispositive and non-dispositive motions, and order the entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Id.)

Pursuant to the Court's review of the Petition (Dkt. No. 1), the Motion (Dkt. Nos. 6, 12), Petitioner's opposition (Dkt. No. 9), the parties' statements at the Hearing, and public records,[2] the Court finds Petitioner is entitled to habeas relief. For the reasons discussed below, the Court denies Respondent's Motion, grants the Petition, and transfers the oral motion for modification of supervised release under 18 U.S.C. § 3583(e)(2).

//

---

[2] Where necessary, the Court takes judicial notice of the public records. See FED. R. EVID. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases."); Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (holding that a court may take judicial notice of undisputed matters of public record).

## II. BACKGROUND

Petitioner claims that the BOP has wrongly denied him ETCs under the FSA because of an immigration detainer. (Dkt. No. 1 at 3–4.) He alleges that, on April 27, 2022, the BOP awarded him ETCs and adjusted his expected release date to December 2, 2022. (Dkt. No. 9 at 1.) Petitioner provided supporting documentation. (Id. at 3.) He further alleges that he asked BOP officials "numerous times for a copy of the alleged final order of removal signed by the immigration judge" to no avail. (Dkt. No. 1 at 4.)

In response, Respondent filed a Motion to Dismiss that does not address Petitioner's allegations but instead makes two arguments why the Petition should be dismissed. Specifically, Respondent argues that Petitioner failed to exhaust his administrative remedies, because he has not raised his claim through the BOP's administrative remedy process. (Dkt. No. 6 at 6–7.) Respondent also argues that Petitioner is statutorily barred from applying ETCs due to a Final Order of Removal issued against him on March 7, 2023,[3] and thus his release date is January 12, 2024, assuming he earns all available Good Time Credits ("GTCs"), as distinguished from ETCs.[4] (Dkt. No. 6 at 3, 5; Dkt. No. 12-2.) Respondent, however, does not appear to

---

[3] The FSA provides that "[a] prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17)))." 18 U.S.C. § 3632(d)(4)(E)(i).

[4] With the Motion, Respondent attaches and relies on a declaration by Yolanda Sanchez, a BOP employee, for the BOP's calculation of various aspects of Petitioner's sentence, including his eligibility to earn FSA ETCs, his earned GTCs, his projected release date, the existence of an immigration detainer issued by the Department of Homeland Security, the existence of the Final Order of Removal, and information regarding administrative exhaustion. (Dkt. No. 6 at 9–12, Sanchez Decl. Exs. A–B.) On

dispute Petitioner's allegation that, in April 2022, his release date was December 2, 2022, based on ETCs, which he did not receive.

Recognizing it must accept Petitioner's allegations as true for purposes of ruling on the Motion, the Court held the Hearing to discuss the obvious issue: on what basis did the BOP continue to detain Petitioner from December 2, 2022, the expected release date, to March 7, 2023, the date the Final Order of Removal was issued.[5] (Dkt. No. 14.) During the Hearing, Respondent confirmed that the March 7, 2023, Final Order of Removal is the only removal order against Petitioner, and that in 2022 his release date was December 2, 2022. Respondent explained, however, that the BOP's policy in 2022 was that the law barred inmates subject to immigration proceedings (like Petitioner at the time) from receiving FSA time credits. According to Respondent, this policy changed in February 2023, at which point the BOP's position was that only inmates subject to a final order of removal were ineligible for ETCs. Recognizing that the Final Order of Removal against Petitioner here was not issued until March 2023, Respondent conceded that Petitioner's ETCs should have applied in February 2023, and he should have been released. Both Respondent and the BOP admitted they had incorrectly relied on Petitioner's immigration detainer as the basis for not applying Petitioner's ETCs and continuing to detain him.

The parties then discussed possible remedies at the Hearing, given the government's error and Petitioner's unauthorized detention. Respondent stated that the

---

December 21, 2023, after ordered to do so by the Court, Respondent filed a Notice of Errata correcting the Motion to include the Final Order of Removal issued against Petitioner that was not initially attached to the Motion. (Dkt. Nos. 6, 11, 12, 12-2.)

[5] The Court has ordered a transcript of the Hearing, which should be available on the docket as soon as it is prepared.

4

Court should order Petitioner's immediate release. Respondent also suggested that the Court construe the Petition as a motion for modification of supervised release under 18 U.S.C. § 3583(e)(2) and transfer the case to the sentencing court, here the Western District of Oklahoma. See United States v. Arellano-Ortiz, 5:19-cr-00004-F-2, Dkt. No. 211 (W.D. Okla. Oct. 17, 2019) (sentencing Petitioner to 70 months imprisonment and four years of supervised release). Respondent noted that such a motion would be available to Petitioner during his term of supervised release, and that it could potentially reduce that term. Petitioner stated that, because the BOP violated his rights, he wants whatever he is entitled to, including pursuing a motion for modification of his supervised release. The Court took the matter under submission.

### III. DISCUSSION

Based on their statements at the Hearing, Respondent and the BOP agree Petitioner should be released from BOP's custody immediately. Although these statements obviously suggest Respondent has abandoned its Motion, the Court nevertheless addresses the arguments therein for the avoidance of doubt. In addition, the Court addresses the issue of a motion for modification of supervised release and transfer.

#### A. Exhaustion Requirement is Waived

The Court exercises its discretion to waive the exhaustion requirement. "Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam); see also Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). The exhaustion requirement applicable to habeas petitions under Section 2241 is a prudential requirement. See Singh v. Napolitano, 649 F.3d 899, 900

1   (9th Cir. 2011) (per curiam) (as amended); see also Ward, 678 F.3d at 1045 ("As a
2   prudential matter, courts require that habeas petitioners exhaust all available judicial
3   and administrative remedies before seeking relief under § 2241."). As the exhaustion
4   requirement is judicially created, the failure to exhaust does not deprive a federal court
5   of jurisdiction. See Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on
6   other grounds by Reno v. Koray, 515 U.S. 50 (1995). Courts also have discretion to
7   waive the exhaustion requirement where pursuing administrative remedies would be
8   futile, the administrative remedies are inadequate or not efficacious, irreparable injury
9   would result, or the administrative proceedings would be void. See Ward, 678 F.3d
10  at 1045 (citations omitted); Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)
11  (citation omitted). A "key consideration" in exercising such discretion is whether
12  "relaxation of the requirement would encourage the deliberate bypass of the
13  administrative scheme." Id. (quoting Montes v. Thornburgh, 919 F.2d 531, 537 (9th
14  Cir. 1990)).

15      Here, the Court exercises its discretion to waive the administrative exhaustion
16  requirement. Requiring Petitioner to fully exhaust his claims would result in a serious
17  risk of irreparable injury and futility. Relaxation of the requirement would not
18  encourage the deliberate bypass of the administrative scheme in the unique
19  circumstances here. It is clear Petitioner has been detained long past his expected
20  release date, whether that was December 2, 2022, or sometime in February 2023.
21  Moreover, Respondent's incorrect calculation of Petitioner's current release date is
22  January 12, 2024, just one week away and at which point any possible relief would be
23  moot. Thus, the Court declines to dismiss the Petition based on a failure to exhaust.
24

### B. Applicability of FSA ETCs

Respondent's only other argument in the Motion contests the Petition substantively by asserting that Petitioner is ineligible to apply FSA ETCs because he is subject to a Final Order of Removal. (Dkt. No. 6 at 3, 5.) As noted above, Respondent changed its position at the Hearing, recommending the Court order Petitioner's immediate release. Indeed, the FSA's text is unambiguous: "A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the <u>subject of a final order of removal</u> under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17)))." 18 U.S.C. § 3632(d)(4)(E)(i) (emphasis added).

There is no dispute here that the Final Order of Removal against Petitioner is dated March 7, 2023. Respondent does not contest that, in 2022, Petitioner's expected release date was December 2, 2022. Respondent explained the BOP's policy in 2022 did not apply ETCs for inmates <u>subject to immigration proceedings</u>, despite the statute's plain text. Respondent explained further that the BOP's policy changed in February 2023 to align with the statute's text. Respondent conceded that Petitioner's ETCs should have applied and he should have been released in February 2023, as there was no final order of removal against him at that time. Both Respondent and the BOP's representative admitted that they had incorrectly relied on Petitioner's immigration detainer to continue to detain him.

In light of this record, Petitioner has shown that he had a vested liberty interest in his ETC credits which, if applied, would have resulted in his release, possibly as early

7

as December 2, 2022.[6] As those credits were not then applied, and the failure to apply them was not supported by a notice or opportunity to respond, and for the reasons stated at the Hearing, Petitioner is entitled to habeas relief. His further detention by the BOP was and is unlawful; indeed, Respondent and the BOP effectively conceded as much at the Hearing. The Court, therefore, denies the Motion, grants the Petition, and orders Petitioner's immediate release from BOP custody.

## IV.     MOTION FOR MODIFICATION OF TERM OF SUPERVISED RELEASE

The parties' statements at the Hearing raised the additional issue of a motion for modification of supervised release to remedy the government's error. Because Respondent admits Petitioner was wrongfully incarcerated due to the BOP's failure to apply ETCs, Respondent suggested the Court construe the Petition as a motion to modify Petitioner's term of supervised release under 18 U.S.C. § 3583(e)(2), and to transfer the case to the sentencing court. Respondent explained that this could potentially result in a reduction of Petitioner's supervised release term, and Respondent noted that the option to move to modify supervised release remained available to Petitioner during that term. The Court asked Petitioner whether he wanted to pursue a motion to modify his supervised release, and he stated that he did. As Petitioner put it: he wants whatever he is entitled to because the BOP violated his rights.

The Court construes the parties' statements at the Hearing as an oral motion to modify Petitioner's term of supervised release pursuant to 18 U.S.C. § 3583(e)(2) and finds the matter should be transferred to the Western District of Oklahoma. A district

---

[6] The Court need not, and does not, determine whether Petitioner should have been released on December 2, 2022, or in February 2023 when BOP policy changed to conform with the FSA's text.

court may transfer an action to any other district court where it might have been brought, for the convenience of the parties and in the interest of justice. See 28 U.S.C. § 1404(a).

The section 3583(e)(2) motion may be brought the Western District of Oklahoma. Despite the Final Order of Removal against Petitioner, he remains subject to his term of supervised release. See United States v. Ramirez-Sanchez, 338 F.3d 977, 980 (2003) (explaining that "deportation does not extinguish a term of supervised release"). Section 3583(e)(2) permits the sentencing court to modify Petitioner's supervised release after considering certain enumerated factors, including his period of over-incarceration. See 18 U.S.C. § 3583(e)(2); United States v. Johnson, 529 U.S. 53, 60 (2000) ("The trial court, as it sees fit, may modify an individual's conditions of supervised release."); see also Reynolds v. Thomas, 603 F.3d 1144, 1148 (9th Cir. 2010) (explaining court could consider sixteen-month period of over-incarceration as favoring supervised release reduction under § 3583(e)) abrogated on other grounds by Sester v. United States, 566 U.S. 231 (2012); Gonzalez v. Doerer, No. CV 23-02679-ODW-DFM, 2023 WL 6164473, at *3 (C.D. Cal. Aug. 7, 2023) (similarly explaining sentencing court could consider over-incarceration period in reducing supervised release term, where respondent conceded petitioner was eligible for application of time credits). Accordingly, this matter may be brought in the Western District of Oklahoma. See Arellano-Ortiz, 5:19-cr-00004-F-2, Dkt. No. 211 (W.D. Okla. Oct. 17, 2019) (sentencing Petitioner to four years of supervised release).

Transferring the matter would also be convenient for the parties and in the interest of justice. Transferring this matter to the sentencing court to consider whether to reduce Petitioner's supervised release term would expedite the parties' intentions.

Petitioner made clear that he will pursue modifying his supervised release, and Respondent suggested it to remedy the government's admitted error in over-incarcerating him. Based on Petitioner's documented release date of December 2, 2022, the BOP unlawfully detained him by as much as thirteen months. Given the record here, transferring would be for the parties' convenience and clearly in the interest of justice. See Johnson, 529 U.S. at 60 ("There can be no doubt that equitable considerations of great weight exist when an individual is incarcerated beyond the proper expiration of his prison term.").

For these reasons, the Court finds Petitioner's oral motion to modify his term of supervised release under 18 U.S.C. § 3583(e)(2) should be transferred to the Western District of Oklahoma. Given Petitioner's imminent release from BOP custody, the Court orders Petitioner to notify the Western District of Oklahoma of his new address as soon as possible. Failure to do so may result in the dismissal of the case for failure to prosecute. !

## V.  CONCLUSION AND ORDER

IT IS THEREFORE ORDERED that:

(1) the Motion (Dkt. Nos. 6, 12) is DENIED;

(2) the Petition (Dkt. No. 1) is GRANTED and the BOP is ordered to immediately release Petitioner from custody;

(3) this action is to be TRANSFERRED to the Western District of Oklahoma to resolve Petitioner's oral motion to modify his term of supervised release under 18 U.S.C. § 3583(e)(2); and

(4) Judgment shall be entered consistent with the foregoing.

As noted above, Respondent and the BOP agree that immediate relief is warranted here, and they do not object to the relief granted in this Order in this unique circumstance.

Dated:  January 5, 2024

      /s/Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge